# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN
AND FOR LEON COUNTY, FLORIDA

**CHAD G. MARZEN,**

**CASE NO.: 18-CA-001311**
**FLA BAR NO.: 0739685**

      **Plaintiff,**

**v.**

**JOHN THRASHER, in his official
Capacity as the President of Florida
State University and the FLORIDA
STATE UNIVERSITY, BOARD OF
TRUSTEES,**

      **Defendant.**

_____/

## AMENDED COMPLAINT

Plaintiff, CHAD G. MARZEN, hereby sues Defendants, JOHN THRASHER, in his

official capacity as the President of Florida State University and FLORIDA STATE

UNIVERSITY, BOARD OF TRUSTEES, and alleges:

## NATURE OF THE ACTION

1.      This is an action brought under §112.3187, Florida Statutes, 42 U.S.C. §2000e et

seq., 42 U.S.C. §1981a and 42 U.S.C. §1983, for claims which are, individually, valued in excess

of Thirty Thousand Dollars ($30,000.00), exclusive of costs, interest and attorney's fees.

2.      This is an action for damages, injunctive relief, attorney's fees and costs.

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, CHAD G. MARZEN, has been a resident of

the State of Florida. Plaintiff is a member of a protected class because of his national origin.

Plaintiff was employed with Defendant at all times pertinent hereto.  He is *sui juris*.

4.      At all times pertinent hereto, Defendant, FLORIDA STATE UNIVERSITY BOARD OF TRUSTEES, (hereinafter "Defendant") has been organized and existing under the laws of the State of Florida, and has been an "employer" as that term is used under the applicable laws set forth above.

5.      At all times pertinent hereto, Defendant, JOHN THRASHER, has been the President of FLORIDA STATE UNIVERSITY, (hereinafter "Thrasher").  He is sued in his official capacity.  Defendant Thrasher has been organized and existing under the laws of the State of Florida, and has been an "employer" as that term is used under the applicable laws set forth above.

## CONDITIONS PRECEDENT

6.      Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and with the EEOC. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

7.      Plaintiff, a 35-year old Hispanic male, was hired by Defendant in March 2011 and began his employment with Defendant in May of 2011 as an Assistant Professor within the Defendant's College of Business ("COB"), Department of Risk Management/Insurance, Real Estate, and Legal Studies ("RMI"). Plaintiff is currently an Associate Professor within the same Department, where he teaches in Legal Studies.  Since the summer of 2013, Plaintiff has regularly taught a risk management course (RMI 4420: Legal and Political Aspects of Insurance).

8.      Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his national

2

origin.  In continued acts of disparate treatment based on his national origin, Plaintiff has been subject to continued wrongful acts of exclusion in the Department, both before and after the awarding of tenure. Furthermore, Plaintiff has been and continues to be subjected to retaliation as a "whistleblower" due to his reporting of misfeasance, malfeasance, and or gross misconduct.

9.      Defendant has enabled and condoned the verbal abuse of Plaintiff. Specifically, on August 1, 2017, in a professional meeting at the College of Business Dean's Office concerning a grievance Plaintiff filed through the FSU-United Faculty of Florida ("UFF") Collective Bargaining Agreement, Dean Michael Hartline, a Caucasian male, targeted Plaintiff and was verbally abusive toward him throughout the meeting.

10.     Despite Defendant and the College of Business having a zero-tolerance policy toward "conduct that creates a hostile environment, threatens others, or attempts to intimidate members of our community," Defendant continues to actively provide support to Dean Hartline.

11.     On January 10, 2018, Plaintiff reported actions of exclusion, discrimination, and retaliation via email to President John Thrasher, Provost Sally McRorie, and Vice-President for Faculty Development and Advancement Janet Kistner.  Thrasher, McRorie, and Kistner were also informed of the verbal abuse suffered by Plaintiff.  Thrasher, Provost McRorie, and Vice-President Kistner consciously and intentionally ignored Plaintiff's email, never reached out to Plaintiff personally to discuss his email and his concerns, and have consciously and intentionally ignored Defendant's own policies concerning discrimination, retaliation, and a hostile work environment in order to support Dean Hartline. In essence, each of these administrators (Thrasher, McRorie, and Kistner) placed fundraising for the College of Business above reports of discrimination, retaliation, exclusion, and a hostile work environment in the College of Business as well as protecting the safety and well-being of Plaintiff and other employees in the College.

3

12.     Defendant has enabled and condoned discrimination, retaliation, exclusion and a hostile work environment within the College of Business and has failed in its oversight responsibility of the College of Business. This failure has occurred as a result of, but is not limited to, the following reasons: personal and/or financial conflicts of interest between members of Defendant's Board of Trustees, Dean Hartline, and/or the College of Business. These conflicts include, but are not limited to: Board of Trustees Chair Edward E. Burr providing a financial donation to the College of Business during Hartline's tenure as Dean; Board of Trustees member Bob Sasser providing a financial donation to the College of Business during Hartline's tenure as Dean; and Board of Trustees member Mark Hillis providing a financial donation to the College of Business Legacy Hall fundraising effort. In essence, each of these individual trustees and Defendant in general placed fundraising for the College of Business above reports of discrimination, exclusion, retaliation and a hostile work environment in the College of Business as well as protecting the safety and well-being of Plaintiff and other employees in the College.

13.     This mistreatment came at the hands of specifically, but not limited to, G. Stacy Sirmans, former Department Chair, a Caucasian male; Department Chair Cassandra Cole, an African-American female; Associate Dean Kathleen McCullough, a Caucasian female; and Dean Michael Hartline, a Caucasian male.

14.     Due to stress relating to discrimination, exclusion, retaliation and a hostile work environment in the College of Business, Plaintiff was diagnosed with a medical condition in June 2016, which has required ongoing treatment to this date.

15.     Plaintiff is an exemplary employee who received summer research grants from the College of Business until Hartline was named Dean. Plaintiff is an expert on insurance law and regulation as well as crop insurance and is the author or co-author of approximately 39  (30

4

solo-authored) published or forthcoming academic articles, including articles which have

appeared in journals published by Harvard Law School, New York University School of Law,

University of Virginia School of Law, University of Texas School of Law, Notre Dame Law

School, Boston College Law School, William & Mary Law School, J. Reuben Clark Law School

at Brigham Young University, and the Baylor Law School. Plaintiff's teaching ratings and

evaluations are typically above departmental and university averages. In 2013, Plaintiff was

awarded the Distinguished Scholar Award from the Seabee Memorial Scholarship Association.

Plaintiff also currently serves on the Board of Advisors of the *Texas Hispanic Journal of Law &*

*Policy* of the University of Texas School of Law.

## DEFENDANT ENGAGED IN DISCRIMINATORY ACTS AGAINST PLAINTIFF BASED ON NATIONAL ORIGIN

16.    In March 2014, then-Department Chair Sirmans, forced Plaintiff and another

Hispanic faculty member in Legal Studies to assume excess student loads from a retiring faculty

member in Legal Studies while two Caucasian teaching faculty in Legal Studies, (Bill Woodyard

and Stephen Bailey) did not see any change to their student loads. In a March 2014 meeting

between Sirmans, McCullough, Darren Prum (another Hispanic legal studies professor), and

Plaintiff, McCullough threatened Plaintiff and another Hispanic law professor with a negative

Dean's letter for tenure if Plaintiff did not teach the class. As an incentive to teach online

sections of a Legal Environment of Business class, Dr. Sirmans sent an email, capping Plaintiff's

teaching load and offering a development grant which Plaintiff and another Hispanic legal

studies professor were required to split.

17.    Two years later, Professor Bailey, a Caucasian employee, was rotated into the

same large online classes that Plaintiff and another Hispanic legal studies professor were

teaching in the fall of 2016 and received a full development grant, which he was not required to split, over the prior summer.

18.     At least two other professors in the College of Business, Professor Michael Brady, a Caucasian male, in the Department of Marketing, and Charles Nyce, a Caucasian male in the RMI department, received an overload (additional pay) from Defendant for teaching large class sections online (classes in the hundreds of students). Despite each teaching over 300 students online, Plaintiff was never offered or received an overload for teaching online classes at Florida State University.

19.     In January 2015, Plaintiff was nominated for a University Undergraduate Teaching Award (recipients receive a one-time award of $2,000). Sirmans was notified in a letter dated January 21, 2015, that the Department had a duty to distribute 30 questionnaires to former students by February 20, 2015, and that the questionnaires are a "critical element" in determining winners of the award. Sirmans neglected to distribute the questionnaires until February 19, 2015, the day before the due date, essentially costing Plaintiff the fair opportunity to receive the award.

20.     During the spring of 2015, then-Department Chair Sirmans notified Plaintiff he would not receive a summer teaching assignment during the summer 2015 term under the guise there was "not enough available funding." Woodyard and Bailey, Caucasian faculty in Legal Studies, were both awarded classes to teach. Woodyard was awarded multiple classes to teach. Sirmans even attempted to obtain another class for Bailey during the summer 2015 term on the Panama City campus, but made no effort to even obtain one single class for Plaintiff during the summer term.

21.     In August 2015, Willy Bolander, a Marketing professor and Caucasian male hired at the same time as Plaintiff, was offered the opportunity by the College to apply for early

promotion to Associate Professor and an associated 12 percent salary boost. At the time of his application for promotion, Bolander only had several academic publications and no solo-authored academic publications while employed at FSU. Plaintiff, a Hispanic male, was not offered the opportunity by the College to apply despite each having numerous academic publications and numerous solo-authored publications while employed at FSU.

22.     In October 2015, Stephen Bailey, a Caucasian professor, was offered the opportunity by Cole to teach an overload course of the BUL 3310 (Legal and Ethical Environment of Business) course. Plaintiff was not offered the opportunity to teach this class by Cole as an overload. Pursuant to the bylaws of the RMI Department and the UFF-FSU Collective Bargaining Agreement, Cole was required to survey all BUL faculty for interest in teaching the course.

23.     Despite Plaintiff being one of the most productive faculty members in the College of Business, during the summer of 2016 Cole submitted the name of Charles Nyce, a Caucasian male and RMI professor, who was hired one year after Plaintiff, as the representative of the RMI department for the College of Business "Emerging Scholar Award." The award carried a $24,000 financial award over three years. Nyce received the award from Dean Hartline in summer 2016, despite having fewer publications than Plaintiff and no solo-authored publications while at FSU at the time of the award.

24.     In August 2016, Dean Hartline awarded Bolander the Carl DeSantis Associate Professor of Marketing, a named chair. At the time of the receipt of the named chair, Bolander only had several academic publications and no solo-authored academic publications while employed at FSU. Plaintiff, a Hispanic male, was not offered the opportunity by the College to

apply for a named chair despite each having numerous academic publications and numerous solo-authored publications while employed at FSU.

25.     By August 2016, the College of Business had awarded numerous awards to Bolander, a Caucasian male, and none to Plaintiff, a Hispanic male, despite the fact that Bolander had far fewer publications than Plaintiff and no solo-authored articles. None were offered or awarded to Plaintiff, a Hispanic male. These awards included the College of Business Dean's Emerging Scholar Award (2014), College of Business Core Values Award (2014), and the Junior Faculty Research Award (2016). Despite being an exemplary employee for seven years and a prolific author, Plaintiff has never received any research award from the College of Business.

26.     During the fall of 2016, Plaintiff applied for promotion and tenure at FSU. Plaintiff received a unanimous vote of support from the RMI Department Promotion and Tenure Committee, the RMI Department voting a whole, and the College of Business Promotion and Tenure Committee.  On September 12, 2016, during the fall semester RMI department meeting, Chuck Nyce directly asked Cole about a proposed new standard and asked whether new standards would apply to his promotion and tenure process which would occur in one year. Cole responded and was directly told a proposed new standard would not apply to him because he was "too far along" in the process. However, Hartline unilaterally changed the applicable tenure standard as applied to Plaintiff.

27.     Specifically, on October 11, 2016, despite unanimous support at each level of the College of Business under the Dean, Hartline targeted Plaintiff and issued an adverse letter for Plaintiff's promotion and tenure. In the letter, Hartline adversely and unilaterally changed the applicable tenure standard for Plaintiff, a Hispanic male, while leaving it alone for Bolander, a

Caucasian male. This unilateral change in standard was completed with no notice given to Plaintiff. This action was also taken without informing the union and a faculty vote of the Legal Studies faculty as required by the UFF-FSU Collective Bargaining Agreement. In particular, Hartline specifically discriminated against Plaintiff's Hispanic origin under the guise of demeaning the quality of academic journals at Harvard Law School, in reference to Plaintiff's 2013 article published in the *Harvard Journal on Racial and Ethnic Justice* entitled, "Hispanics in the Heartland: The Fremont, Nebraska Immigration Ordinance and the Future of Latino Civil Rights."

28.    Following the promotion and tenure process in 2016 and 2017, on February 8, 2017, during the RMI department meeting Nyce once again asked if his promotion and tenure standard would change. Cole once again responded to Nyce it would not change for him (although it had unilaterally changed for Plaintiff and another Hispanic professor in legal studies).

29.    In April 2017, Plaintiff learned that other adjunct faculty and teaching faculty were awarded summer school classes and/or multiple classes, while Plaintiff had not received notification of teaching any summer classes. In addition, Cole failed to send out a summer school inquiry as required by RMI department bylaws and the UFF-FSU Collective Bargaining Agreement. In fact, none of the Hispanic faculty in Legal Studies, including Plaintiff, received a summer teaching assignment while Bailey and Woodyard (both Caucasian males) received classes to teach. For the second summer in three years, Plaintiff was denied a summer teaching assignment.

30.    During the summer 2017, Plaintiff was also denied a Dean's Summer Research Grant, for the second consecutive year in a row, despite being one of the most productive

9

research faculty in the College of Business. Plaintiff had more publications and solo-authored publications than Chuck Nyce, a Caucasian male in the RMI department who received research grants both years.

31.     On June 2, 2017, without any financial support from the College of Business, Plaintiff filed a grievance through the UFF-FSU Collective Bargaining Agreement that the RMI department violated the agreement by permitting adjuncts to teach summer classes before full-time faculty. After Vice-President Kistner failed to resolve the grievance at the facilitation level, the grievance proceeded to a Step 1 meeting with Dean Michael Hartline.

32.     On August 1, 2017, a Step 1 meeting was held in the College of Business Dean's Office with Dean Michael Hartline. Attending the meeting were two employees of FSU's Human Resources office as well as Professor Nancy Rogers, Plaintiff's union grievance representative. Throughout the meeting, Hartline badgered, bullied, harassed and was verbally abusive to Plaintiff. Hartline also bullied and badgered Plaintiff concerning his Assignments of Responsibilities ("AORs") and past teaching assignments, interrupted Plaintiff, and did not allow Plaintiff the opportunity to keep speaking. Although the grievance was not concerning Plaintiff's research record, Hartline also targeted Plaintiff's exemplary research record and told Plaintiff he had "serious concerns" regarding his research record. Hartline noted he had no knowledge of an issue regarding Plaintiff being denied a summer class, directly contradicting his April 27, 2017 affidavit, in which he stated under oath that he was "familiar" with allegations filed by Plaintiff in an exhibit to a whistleblower complaint with FCHR filed by Plaintiff on April 6, 2017. Hartline also expressed the sentiment that his management team "could do no wrong" and that they had "his full support."

33.     In an August 21, 2017 letter, although the College allowing adjunct faculty to teach summer classes over full-time faculty was a clear violation of the UFF-FSU Collective Bargaining Agreement, Hartline denied Plaintiff's grievance. In essence, Hartline failed to investigate and remedy a clear violation of the UFF-FSU Collective Bargaining Agreement.

34.     On August 25, 2017, Cole sent an email to the RMI Department with a "list of recognized journals." This journal listing was not voted on the Legal Studies faculty nor was notice given to the union as required by the UFF-FSU Collective Bargaining Agreement. The standard under which Plaintiff was hired included "Highly Regarded" publications as Law Reviews at top 60 law schools. Hartline, through McCullough and Cole, consciously and intentionally disparaged Plaintiff's research record through the new listing. All of Plaintiff's publications were diluted to simply include "Recognized" publications on the listing, while two publications (in the *Florida Bar Journal*) of Stephen Bailey, a Caucasian male (who is not a research professor), were elevated to "Highly Regarded" from "Recognized" in the new listing.

35.     On September 7, 2017, a Step II meeting was held with Provost McRorie concerning Plaintiff's grievance.  On October 6, 2017, Provost McRorie issued a decision letter, overturning Dean Hartline's denial of the June 2, 2017 grievance. In the letter, Provost McRorie noted she was "reaffirming the University's intent to uphold the language in the Collective Bargaining Agreement, particularly as it relates to Summer Supplemental Assignments."

36.     In January 8, 2018, Plaintiff was informed that the RMI area hired a tenure-track faculty member in Risk Management and Insurance. Plaintiff was completely excluded from notification of any of the candidate visits or events with the visits, as required by the Florida Government-in-the-Sunshine Law, Fla. Rev. Stat. § 286.011.

37.     In response to the January 8, 2018 email received from Cole, on January 10, 2018, Plaintiff reported actions of discrimination, and retaliation (exclusion) via email to President John Thrasher, Provost Sally McRorie, and Vice-President for Faculty Development and Advancement Janet Kistner. President Thrasher, Provost McRorie, and Vice-President Kistner were also informed of the verbal abuse suffered by Plaintiff. President Thrasher, Provost McRorie, and Vice-President Kistner consciously and intentionally ignored Plaintiff's email, never reached out to Plaintiff personally to discuss his email and his concerns, and have consciously and intentionally ignored Defendant's own policies concerning discrimination, retaliation, and a hostile work environment in order to support Dean Hartline and fundraising for the College of Business.

38.     On March 19, 2018, Plaintiff had his annual evaluation with Cole. In a narrative accompanying Plaintiff's evaluation, Cole wrote "While you were highly productive this year, none of your work appeared in top-tier journals. As you work towards becoming a full professor, you need to target top-tier outlets for your work which are the top 60 law reviews and journals."

39.     In March 2018, Plaintiff filed another grievance through the UFF-FSU Collective Bargaining Agreement against Dean Hartline and the College of Business for violating the Collective Bargaining Agreement regarding the utilization of the standard which was unilaterally dictated by Dean Hartline, not voted on the Legal Studies faculty, and not communicated to the union as required by the Collective Bargaining Agreement. Vice-President Kristner failed to resolve the grievance.

40.     On April 2, 2018, Plaintiff was informed by Cole he once again did not receive a Dean's Summer Research Grant. For three consecutive summers (2016, 2017 and 2018), Plaintiff was denied summer research support by Dean Hartline and the College of Business

12

despite authoring numerous publications and publishing in high quality journals as indicated by the standard upon which he was hired.

41.     Since regularly teaching an RMI course since the summer of 2013 (RMI 4420: The Legal and Political Aspects of Insurance), and having a research agenda including research in crop insurance and insurance law and regulation, Plaintiff, a Hispanic male, has faced discrimination and retaliation or reporting/opposing discrimination by being excluded from participating in RMI area meetings in the Department. However, throughout Plaintiff's employment at FSU, Bailey and Woodyard, both Caucasian males, have been invited and allowed to participate in REE (Real Estate) area meetings in the Department. In addition, Pat Maroney, a Caucasian male and retired professor in Legal Studies and a professor who conducted research in insurance law, was invited and allowed to participate in RMI meetings during his tenure at FSU. In fact, Plaintiff has been excluded from numerous RMI functions and events throughout his employment at FSU. By way of example, in the spring of 2018 alone, this has included Insurance Days, the RMI Executive Council meetings in April 2018 and the RMI Spring Banquet in April 2018, while Caucasian faculty were invited.

42.     On May 3, 2018, in an email to the College of Business faculty, Hartline announced the awarding of the Robert L. Atkins Professorship in Risk Management and Insurance, a named chair, to Nyce, a Caucasian male. In his email, Hartline noted that "This professorship is awarded in recognition of outstanding scholarly performance over an extended period of time." At the time of the award of the named chair, Plaintiff, a Hispanic male, had far more publications than Nyce, a Caucasian male. Plaintiff, a Hispanic male, was not afforded the opportunity to apply for this named chair.

**PLAINTIFF ENGAGED IN PROTECTED ACTIVITY AND SUBJECTED TO RETALIATION AFTER REPORTING LACK OF DISTRIBUTION OF ASSIGNMENTS**

13

**IN A "FAIR AND EQUITABLE" MANNER AND CONCERNS REGARDING BUL 3310 COURSE**

43.     In October 29, 2015, Plaintiff reported to Department Chair Cole in writing in an electronic mail message concerns about course assignments in the Legal Studies area, specifically, that one faculty member (Woodyard) was awarded multiple courses during the summer 2015 term and Plaintiff was awarded none. Plaintiff also reported concerns regarding Cole's decision to permit Stephen Bailey, a Caucasian male, to opt out of block exams for the BUL 3310: Legal and Ethical Environment of Business course in the spring 2016 after the FSU Undergraduate Policy Committee granted the BUL 3310 course block exam status. Subsequently, in December 2015, Cole also allowed Robyn Jackson (an adjunct and attorney with the FSU General Counsel's office at the time), to opt out of the standard block exam format for the Spring 2016 semester.

44.     During the fall semester 2015, Plaintiff also opposed a proposal that would add a required ethics component to the BUL 3310 class. Hartline, through Cole and McCullough, sought to mandate utilization of the "Ethical Leadership Certification Program," sponsored by the National Association of State Boards of Accountancy (NASBA) Center for the Public Trust. The Center for the Public Trust, according to their website, earns $39.99 for each student who registers for this certification program. This curriculum was developed by Dr.'s O.C. and Linda Ferrell, professors at Auburn University and close personal mentors and friends to the Dean. In addition, Dr.'s O.C. and Linda Ferrell are significant donors to the FSU College of Business.

45.     However, in retaliation for expressing his concerns, Plaintiff was given no departmental assistance in procuring a grader for the BUL 3310 class during the Spring 2016 semester after Katie Miller, the grader/coordinator for the class, on November 5, 2015, provided notice she would not be returning for the spring 2016 semester. This lack of assistance was done

14

consciously and intentionally with the intention of increasing Plaintiff's workload. On November 9, 2015, Plaintiff notified Cole and McCullough of the necessity of hiring a new grader; Cole and McCullough neglected their responsibility to assist Plaintiff. Finally, on December 11, 2015, over one month later, Cole finally notified Plaintiff there would not be enough time to find a grader for the new semester. Plaintiff was required to obtain a new grader without any departmental assistance.

46.     Cole also retaliated against Plaintiff during his spring 2016 annual review by assigning a rating on teaching far below that of the rating assigned by the departmental Faculty Evaluation Committee.

47.     Hartline, McCullough and Cole further retaliated against Plaintiff for engaging in a protected activity by denying him a Dean's Summer Research Grant for the summer of 2016.

48.     Hartline, McCullough and Cole further retaliated against Plaintiff for engaging in a protected activity by denying him the opportunity to apply for the Dean's Emerging Scholar Award during the summer of 2016 as well as the opportunity to apply for a named chair during the summer of 2016.

49.     Due to stress caused by discrimination, retaliation, exclusion, and a hostile work environment in the Department and in the College of Business, Plaintiff was diagnosed with a medical condition in June 2016 which has resulted in ongoing medical treatment to this date.

**PLAINTIFF FILED A WHISTLEBLOWER COMPLAINT FOR ENGAGING IN PROTECTED ACTIVITY UNDER CHAPTER 112, FLORIDA STATUTES AND A COMPLAINT WITH THE EEOC FOR DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN**

50.     On April 6, 2017, Plaintiff filed a Whistleblower complaint with the Florida Commission on Human Relations (FCHR #201700936). On April 5, 2017, Plaintiff also filed a Complaint with the EEOC for discrimination on the basis of national origin.

**PLAINTIFF WAS SUBJECTED TO FURTHER RETALIATION BY DENIAL OF ANY SUMMER FUNDING DURING THE SUMMER 2017 TERM AND THEREAFTER**

51.     Although Plaintiff was awarded promotion and tenure in January 2017, Hartline and Cole continued to retaliate against Plaintiff by denying him an opportunity to teach a summer class during the summer of 2017, the second time in three years Plaintiff was denied a summer teaching opportunity when Bailey and Woodyard, both Caucasian males, received more opportunities to teach when eligible.

52.     Hartline, McCullough, and Cole retaliated against Plaintiff in a successful attempt to deny him any summer funding for the summer of 2017. While Plaintiff's whistleblower complaint was filed on April 6, 2017, Hartline, McCullough, and Cole were given adequate time to remediate the allegations contained in "Exhibit A" of the whistleblower complaint by the start of the summer term in May 2017. Instead, Hartline, McCullough and Cole consciously and intentionally chose to continue retaliating up to and including year 2000[1].

53.     In particular, Hartline, through Cole, denied Plaintiff the opportunity to teach a summer course on the FSU Panama City campus in Panama City, Florida. During the spring 2017 semester, Plaintiff had been scheduled to teach BUL 3350 (Uniform Commercial Code Business Law Problems) on the Panama City course. The course was ultimately canceled for the spring 2017 semester due to low enrollment. Instead of offering the summer 2017 class to Plaintiff, Cole offered the class to Stephen Bailey, a Caucasian male.

54.     Pursuant to the bylaws of the RMI department and the UFF-FSU Collective Bargaining Agreement, Cole was required to survey all RMI faculty for availability to teach during the summer of 2017. Cole failed to take such action. Cole, at Hartline's direction,

---

[1]     Plaintiff is exhausting his administrative remedies on the most recent denials of summer teaching under Chapter 760 and Title VII.

assigned all Caucasians and a nonpermanent faculty member, Bill Gladwin, who is a Caucasian male and retired Associate General Counsel for FSU, to teach multiple classes during the summer of 2017, while denying all Hispanics, including Plaintiff, in the RMI department such an opportunity.

55.     In addition, the College of Business's Executive Committee Meeting minutes reflect Hartline's thanks to the Department chairs for utilizing the least expensive employees to teach during the summer term. At Hartline's direction, this was done specifically to raise the College of Business's Summer Research Grant awards. However, under the guise of budgetary constraints and the need to use inexpensive faculty, Cole then assigned Dr. Dean Gatzlaff, a Caucasian male and one of the highest paid faculty in the College of Business, to teach during the summer 2017 term.

56.     In March 2017, Cole conducted a faculty evaluation with Plaintiff and applied Hartline's unapproved new journal ranking discussed in Hartline's Promotion and Tenure letter to Plaintiff. As a result, Cole's decision targeted Plaintiff's exemplary work (six journal article acceptances in 2016, including a co-authored article in the *New York University Journal of Law & Business* of the New York University School of Law) and cost Plaintiff the opportunity to receive a Dean's Summer Research Grant.

57.     Hartline, McCullough, and Cole essentially changed the evaluation criteria for College of Business Summer Research grants to ensure that Plaintiff failed to receive financial support during the summer of 2017.  None of the Hispanic faculty in the RMI Department received a COB Summer Research Grant in the summer of 2017; however, Nyce, a Caucasian male with less seniority in a tenure-track position, received a grant.

17

58.     Hartline and Cole also sent an Assignment of Responsibilities ("AOR") form to Plaintiff to complete for the summer 2017 term, assigning him 100% research duties over the summer 2017 term without the receipt of any pay.

59.     Without any summer funding, during the summer 2017 Plaintiff filed a grievance through the UFF-FSU Collective Bargaining Agreement that the RMI department violated the agreement by permitting adjuncts to teach summer classes before full-time faculty. After Vice-President Kistner failed to resolve the grievance at the facilitation level, the grievance proceeded to a Step 1 meeting with Dean Michael Hartline.

60.     Prior to the August 1, 2017 Step 1 meeting, on June 5, 2017 Dean Hartline sent an email to the College of Business faculty with the subject line, "Diversity, Inclusion and Mutual Respect." Hartline's email stated specifically: "Conduct that creates a hostile environment, threatens others, or attempts to intimidate members of our community will not be tolerated."

61.     During the August 1, 2017, Step 1 meeting, Dean Hartline badgered, bullied, harassed, and was verbally abusive toward Plaintiff, despite being clearly aware of Defendant and the College of Business's zero-tolerance policy toward "conduct that creates a hostile environment, threatens others, or attempts to intimidate members of our community."

62.     Dean Hartline further retaliated against Plaintiff by denying his grievance in an August 21, 2017 letter.

63.     Following a Step II meeting with Provost McRorie on September 7, 2017 concerning Plaintiff's grievance, on October 6, 2017 Provost McRorie issued a decision letter, overturning Hartline's decision, confirming Hartline and Cole violated the UFF-FSU Collective Bargaining Agreement. During this same summer of 2017 Cole clearly violated the UFF-FSU Collective Bargaining Agreement, Defendant, through Hartline, rewarded the transgressions

against the Collective Bargaining Agreement by promoting Cole to the William T. Hold Professorship in Risk Management and Insurance.

64.     Following the summer 2017 term, Hartline, McCullough and Cole further retaliated against Plaintiff by Cole's sending of an email with a "list of recognized journals." Hartline, through McCullough and Cole, further intentionally disparaged Plaintiff's research record. All of Plaintiff's publications were diluted to simply "Recognized" publications on the listing, while two publications of a Caucasian male, Stephen Bailey, were elevated to "Highly Regarded" from "Recognized."

65.     Cole, through Stephen Bailey, continued to retaliate against Plaintiff by bullying Plaintiff to follow an unapproved curriculum for the BUL 3310 course. In a January 3, 2018 email to Plaintiff, Bill Woodyard, and David Orozco, Bailey dictated curriculum for the BUL 3310 class that was not approved by the Legal Studies Curriculum Committee in direct violation of the RMI department bylaws. To the extent such curriculum was approved through the University Curriculum Committee, it was completed so through an *ultra vires* action. Prior to the January 3, 2018 email, Bailey submitted a "Curricular Request" for approval to the FSU University Curriculum Committee without any discussion or approval by the Legal Studies Curriculum Committee, in violation of the RMI department bylaws. The "Curricular Request" contained the following statement: "This request has been approved by the legal studies faculty (contact William Woodyard or Steve Bailey, faculty), and the chair of the department (Cassandra Cole, department chair and faculty). The "Curricular Request" was submitted by Bailey on behalf of Cole, and completed with the false and fraudulent intent to misrepresent and deceive, excluding Plaintiff and the other Hispanic faculty in Legal Studies.

66.     Cole also submitted a "Curricular Request" for a combined BUL 3351 class (UCC and Law for Accountancy) that was unapproved by the Legal Studies faculty, also in violation of the RMI department bylaws. The "Curricular Request" contained the following statement: "This course has been certified by the accounting faculty (contact Holly Sudano, faculty), the legal studies faculty (contact William Woodyard or Steve Bailey, faculty), and the chair of the department (Cassandra Cole, department chair and faculty). The "Curricular Request" was submitted by Cole and completed with the false and fraudulent intent to misrepresent and deceive, excluding Plaintiff and the other Hispanic faculty in Legal Studies.

### AFTER DIRECTLY REPORTING DISCRIMINATION AND RETALIATION, TO PRESIDENT THRASHER, PROVOST MCRORIE, AND VICE-PRESIDENT KISTNER, THESE INDIVIDUALS CONDONED AND ENABLED ADDITIONAL RETALIATION AGAINST PLAINTIFF

67.     On January 10, 2018, Plaintiff reported actions of discrimination, and retaliation via email to President Thrasher, Provost McRorie, and Vice-President Kistner. All three individuals consciously and intentionally ignored Plaintiff's concerns and the Defendant's own policies concerning discrimination, retaliation and a hostile work environment in the College of Business. None of them showed any concern in reaching out personally to Plaintiff.

68.     In January 2018, Plaintiff, then a tenured member of the RMI department, discovered he was not given any notification of the campus visit dates or the names of candidates for a tenure-track faculty position in Risk Management and Insurance during the fall 2017 semester. Cole retaliated against and intentionally excluded Plaintiff, in violation of the Florida Government-in-the-Sunshine Law, Fla. Rev. Stat. § 286.011.

69.     As part of the Association to Advance Collegiate Studies of Business ("AACSB") accreditation process, a site review team visited with faculty, staff and students of the College of Business in February 2018. Both Bill Woodyard and Stephen Bailey, both Caucasian males in

Legal Studies, were allowed to participate in the process. Hartline, McCullough and Cole further retaliated against Plaintiff by excluding him as a tenured faculty member. In essence, Defendant cared so little about diversity and inclusion that Defendant permitted the College of Business to obtain reaccreditation through a process that did not include the input of all tenured and tenure-track Hispanic faculty.

70.    During the spring of 2018, Hartline, through Cole, further retaliated against Plaintiff by requiring him to utilize the Dean's inappropriate journal listing for evaluation of all faculty during his service on the Faculty Evaluation Committee.

71.    Hartline, through Cole, continued to retaliate against Plaintiff by noting in Cole's March 19, 2018 evaluation of Plaintiff that "none of [Plaintiff's] work appeared in top-tier journals." This was written despite Plaintiff having six law review articles accepted for publication in 2017, including an article in the *New York University Journal of Law & Liberty* of the New York University School of Law. This disparagement of Plaintiff's record, through Hartline, has continued unabatedly even after a 21-1 University Promotion and Tenure Committee vote and the awarding of promotion and tenure to Plaintiff.

72.    The application of Hartline's unilateral journal listing and continued retaliation against Plaintiff has resulted in Plaintiff filing a second grievance within the span of one year after the awarding of tenure. In March 2018, Plaintiff filed a grievance against Dean Hartline and the College of Business for violating the Collective Bargaining Agreement regarding the utilization of Dean Hartline's journal listing. Despite the conscious knowledge of President Thrasher, Provost McRorie and Vice-President Kistner of this illegal, discriminatory, and retaliatory standard, each of these administrators has supported Dean Hartline and the continuous

21

discrimination and retaliation in the College of Business. Vice-President Kristner failed to resolve the grievance.

73.     Hartline, McCullough and Cole have also acted in further retaliation by excluding Plaintiff from participating in RMI functions and events through their tenure in management in the College of Business, while Caucasian faculty received invitations. After Plaintiff's email in January 2018 to President Thrasher, Provost McRorie, and Vice-President McRorie, this exclusion has included events such as Insurance Days, the RMI Executive Council meetings in April 2018 and the RMI Spring Banquet in April 2018. In addition, despite having a rich scholarly agenda in the areas of crop insurance and insurance law, Plaintiff has not been allowed to participate in RMI area meetings in the Department.

74.     Hartline, McCullough and Cole discriminated and retaliated against Plaintiff once again during the spring of 2018 in denying a Dean's Summer Research Grant for the third summer in a row.

75.     On May 3, 2018, Hartline, McCullough and Cole continued their campaign of retaliation by announcing the awarding of the Robert L. Atkins Professorship in Risk Management and Insurance, a named chair, to Nyce, a Caucasian male. This is despite the fact that Nyce had far fewer publications and less seniority in a tenure-track or tenured position than Plaintiff, a Hispanic male. Plaintiff also was never afforded an opportunity to apply.

76.     The continued utilization of Hartline's discriminatory and retaliatory journal listing has resulted in substantial financial harm to Plaintiff through lost opportunities for Summer Research Grants and recognition and funding through a named chair position.

<u>**COUNT I**</u>
**PUBLIC EMPLOYEE WHISTLE-BLOWER RETALIATION**

77.     Paragraphs 1 through 76 are re-alleged and incorporated herein by reference.

78.     This count sets forth a claim against Defendant under §112.3187, et seq., Fla. Stats.

79.     Plaintiff was a public employee protected under the provisions of Chapter 112, Fla. Stats.

80.     As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that he reported. Plaintiff also disclosed this information when he participated in investigations, hearings, or other agency inquiries. Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Fla. Stats.

81.     After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above.

82.     Plaintiff's being blocked from one or more positions, continuing to be denied summery teaching positions and other actions described above were a direct adverse result of his reporting violations of rules, regulations or laws, and/or his reporting malfeasance, misfeasance or gross misconduct, and/or his participating in investigations, hearings or other inquiries, specified in part above.

83.     The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against him for his "whistleblowing" activities.

23

84.     As a direct and proximate result of the actions taken against him by Defendant, Plaintiff has suffered injury including, but not limited to, past and future wage losses, loss of benefits, emotional pain and suffering and loss of the capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present and will occur in the future.  Plaintiff is entitled to injunctive relief.

## COUNT II
## NATIONAL ORIGIN DISCRIMINATION

85.     Paragraphs 1 through 76 are re-alleged and incorporated herein by reference.

86.     This is an action against Defendant for discrimination based upon national origin brought under Title VII, 42 U.S.C. §2000e et seq.

87.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's national origin in that Plaintiff was treated differently than similarly situated employees of Defendant who are born and raised in the United States and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's national origin.

88.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

89.     Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

90.     In essence, the actions of agents of Defendant which were each condoned and ratified by Defendant were based on Plaintiff's national origin and in violation of the laws set forth herein. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein have led to Plaintiff suffering financial and other damages.

91.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon national origin.

92.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT III
**National Origin Based Discrimination brought against Thrasher under the Equal Protection Clause of the Fourteenth Amendment**

93.     Paragraphs 1-76 are re-alleged and incorporated herein by reference.

94.     This is an action against Defendant Thrasher for national origin discrimination brought under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.  Defendant Thrasher is a person under the laws applicable to this action.

95.     Defendant Thrasher, his agents and employees identified in part herein, under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, owed Plaintiff a duty to protect him from becoming a victim of discrimination on the basis of his national

origin.  Defendant Thrasher also owed Plaintiff a duty not to discriminate against him through his actions and/or the actions of other final policymakers identified herein all of whom acted as Thrasher's delegees.

96.     Plaintiff was discriminated against and treated differently than similarly situated employees who are not Hispanic and Defendant Thrasher intended such discriminatory treatment.

97.     Defendant Thrasher either made the decisions or controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Alternatively, Thrasher's delegees, identified at least in part above, were final policymakers on behalf of Thrasher and their actions resulted in the constitutional violations alleged herein.

98.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, and in violation of the laws set forth herein.

99.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to adverse actions against Plaintiff.

100.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon national origin and under the laws cited herein.

101.    The discrimination complained of herein does not further an important government interest that is substantially related to that interest and there is no justification for the discriminatory policies and practice.

102.    As a direct and proximate result of Defendant's conduct described above, Plaintiff is entitled to prospective injunctive relief and attorneys fees.  He is not seeking damages under this Count.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest and equitable relief; and

(g)    grant such other relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk via the Florida Courts e-Filing Portal this 12th day of April 2020, which will send Notification of Electronic Filing to all counsel of record.


/s/ Marie A. Mattox
Marie A. Mattox

28